DEBORAH B. HARMON, Plaintiff,
v.
DANIEL L. FRANGIS, and RIGHT TRACK ENTERPRISES OF CARY, INC., Defendants.
No. COA08-858.
Court of Appeals of North Carolina.
Filed May 19, 2009.
This case not for publication
Bryant Duke Paris, III, for plaintiff.
Steven T. Harris for defendants.
ELMORE, Judge.
Deborah Harmon (plaintiff) appeals from an order enforcing a settlement agreement between herself and Daniel L. Frangis (defendant Frangis) and Right Track Enterprises of Cary, Inc. (defendant business; together, defendants). We affirm.

I.
On 12 October 2005, plaintiff instigated this suit against defendant Frangis for breach of fiduciary duty and fraud regarding the operation of a general partnership they formed in 2002. Trial was set for 28 January 2008. On 9 January 2008, Atkins/Hunt, P.C. (Atkins/Hunt), plaintiff's attorneys at the time, moved to withdrawfrom their representation of plaintiff based on plaintiff's failure to abide by the fee agreement. The trial court granted the motion on 28 January 2008. In the interim, Atkins/Hunt continued to act on plaintiff's behalf, filing both a motion to continue and a motion to reconsider the denial of that motion.
Also while the motion to withdraw was pending, on 24 January 2008, Atkins/Hunt contacted counsel for defendants and negotiated a settlement on all claims. On 25 January 2008, counsel for defendants received a call from David Duke (Duke), an attorney, notifying them that plaintiff did not want to settle. This call was the first either Atkins/Hunt or defendants' counsel was aware that Duke was involved in the case.
On 28 January 2008, at the scheduled trial, a representative from Atkins/Hunt told the court, and Duke himself admitted, that a settlement had been reached, but plaintiff had changed her mind and decided not to sign the agreement. On 29 January 2008, defendants' counsel filed a motion to enforce the settlement agreement. The trial court granted the motion on 31 March 2008 and dismissed all claims and counterclaims with prejudice. Plaintiff now appeals the grant of that motion.

II.
Plaintiff first argues to this Court that the settlement agreement was not valid because there was no meeting of the minds as to its terms. Specifically, plaintiff argues that the record lacks any evidence of offers and counteroffers to settle; that she refused to sign the settlement agreement; and that she never agreedto dismiss her action as part of the purported settlement agreement.
As to the first argument, while evidence of offers and counteroffers would likely be evidence that negotiations preliminary to a meeting of the minds occurred, we cannot say that their absence shows the opposite. As to the second, plaintiff's new attorney, David Duke, admitted himself that plaintiff did not sign the agreement because she had simply changed her mind. Plaintiff does not explain why changing her mind after an agreement had been entered into is a legally sufficient reason for the agreement to be invalidated, and this Court declines to create one on her behalf. As to the last, this Court has specifically rejected such an argument in the settlement agreement context, and we must follow that ruling. See Harris v. Ray Johnson Constr. Co., 139 N.C. App. 827, 830-31, 534 S.E.2d 653, 655 (2000) (holding that where both parties entered into an agreement to settle an entire case, including release of claims, a meeting of minds occurred).
Plaintiff's legal argument is based entirely on Chappell v. Roth, in which our Supreme Court reversed this Court's ruling that the trial court erred in denying the plaintiff's motion to enforce a settlement agreement. 353 N.C. 690, 693, 548 S.E.2d 499, 500-01 (2001). The factual situation in that case is easily distinguished from those at hand, however: There,
the mediated settlement agreement provided that defendants would pay $20,000 to plaintiff in exchange for a voluntary dismissal with prejudice and a "full and complete release, mutually agreeable to both parties." The "mutually agreeable" release was part of the consideration, and hence, material to the settlement agreement. The parties failed to agree as to the terms of the release, and the settlement agreement did not establish a method by which to settle the terms of the release. Thus, no meeting of the minds occurred between the parties as to a material term; and the settlement agreement did not constitute a valid, enforceable contract.
Id. at 693, 548 S.E.2d at 500. That is, in Chappell, the parties agreed to a vague descriptive term (a "mutually agreeable" release), but not how that term would actually come to fruition. Such is not the case here.
Thus, we overrule this assignment of error.

III.
Plaintiff next argues that the settlement agreement was not valid because Atkins/Hunt was not authorized to act as her representative at the time the agreement was entered into. We disagree.
We recognize that there is a presumption in North Carolina in favor of an attorney's authority to act for the client he professes to represent. This presumption applies to both procedural and substantive aspects of a case. Special authorization from the client is required before an attorney may enter into an agreement discharging or terminating a cause of action on the client's behalf. "Where special authorization is necessary in order to make a dismissal or other termination of an action by an attorney binding on the client . . . it [is also] presumed . . . that the attorney acted under and pursuant to such authorization." One who challenges the actions of an attorney as being unauthorized has the burden of rebutting this presumption and proving lack of authority to the satisfaction of the court.
Harris, 139 N.C. App. at 829, 534 S.E.2d at 654-55 (citations omitted; alterations in original).
To overcome this presumption, plaintiff points primarily to the fact that the settlement agreement was reached while the motion to withdraw was pending. However, "[a]n attorney once appearing continues to appear for all purposes until the judgment is satisfied, unless he retires in the meantime by leave of the court, and so long as his name continues to appear there, the adverse party has the right to treat him as the authorized attorney." Weddington v. Weddington, 243 N.C. 702, 704, 92 S.E.2d 71, 73 (1956). This Court also noted in Weddington that an attorney's attachment to a case "continues so long as the opposing party has the right by statute or otherwise to enter a motion therein or to apply to the court for further relief." Id. At the time the settlement agreement was reached, Atkins/Hunt was still the attorney of record for plaintiff. Further, Atkins/Hunt continued to file motions on plaintiff's behalf.
The other piece of evidence to which plaintiff points  her affidavit stating that she never extended the authority to settle the case to Atkins/Hunt  also does not suffice to overcome this presumption. See Royal v. Hartle, 145 N.C. App. 181, 184, 551 S.E.2d 168, 171 (2001) (affirming trial court's finding that presumption not overcome where only evidence before court were affidavits of clients). Her argument based on her retaining another attorney after the settlement agreement was entered into is simply a logical nullity. As such, we overrule this assignment of error.

IV.
Because plaintiff has not shown that the trial court erred in its ruling, we affirm its grant of the motion to enforce the settlement agreement.
Affirmed.
Judges CALABRIA and STROUD concur.
Report per Rule 30(e).